CHICAGO AND NORTH WESTERN RAILWAY COMPANY AND CHARLES P. MEGAN, TRUSTEE OF THE PROPERTY OF THE CHICAGO AND NORTH WESTERN RAILWAY COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 61703.   Promulgated March 30, 1939.

*Nelson Trottman, Esq.*, for the petitioner.
*Edner C. Algire, Esq.*, and *Earl C. Morison, Esq.*, for the respondent.

OPINION.

STERNHAGEN: The Commissioner determined the deficiencies in question for 1927 and 1928 by making numerous adjustments in the petitioner's income as shown upon its returns. These items (except the Sioux City land item) have all been settled to the satisfaction of the parties.

The petitioner, in order to overcome the full effect of the deficiencies thus determined by the Commissioner, complains that deductions should have been taken by it and allowed by the Commissioner for depreciation and obsolescence upon the specific elevators and docks enumerated in the findings, the largest and most important of which is the South Chicago elevator. No deduction for depreciation has been taken by the petitioner on its returns because as to these properties its general accounting method, applicable to all of its properties, was what in *Central Railroad Co. of New Jersey*, 35 B. T. A. 501, was called the retirement method, fully described in that opinion.

The petitioner has made a vigorous attempt to secure a different result in this proceeding from that in the *Jersey Central* case. After a trial of 10 days, including the testimony of numerous witnesses and voluminous exhibits, it has submitted a 200-page printed brief, undertaking by an analysis of the *Jersey Central* opinion to support a criticism of its soundness, an exposition of its extent and limitations, and a demonstration of its inapplicability in several asserted respects to the case at bar. These have required and received the most careful

study, but have failed to provide any grounds either for modifying the views expressed in that opinion or for distinguishing between that case and this. Indeed, the decision here should rest categorically upon a reaffirmance of the reasoning in that opinion.

The elaborate and detailed argument which the petitioner has made fails to obscure or overcome the primary considerations, that it has voluntarily elected to adopt and consistently to adhere to the retirement system of accounting in respect of depreciable assets; that it has omitted to seek and has failed to secure the approval of the Commissioner to change or depart from its system of accounting; that the system thus adopted is reasonably adapted to a fair and clear determination of annual income; and that the proposed exceptional treatment of the particular items in question through the use of annual depreciation allowances for the years in question would be an unwarranted exception resulting in a distortion rather than a clear reflection of income.

This conclusion follows a full study of the evidence and the briefs; but it was also intimated at a very early stage of the trial, in view of the *Jersey Central* opinion, then already promulgated, in order to forestall what seemed then to be an unnecessary, wasteful, and burdensome proceeding for all concerned. Petitioner, however, insisted upon proceeding, in order that there might be a complete record in the event an appeal should be taken. At that time, the *Jersey Central* proceeding was pending on appeal in the Circuit Court of Appeals for the Third Circuit, and it seemed wiser to the presiding Member to permit the record to be made as full as the petitioner demanded. We are, however, in view of our reasoned conclusion as to the law of the case, constrained, as was the Board in the *Jersey Central* case, to omit, as unnecessary to a proper decision, the detailed findings of facts upon which deductions for depreciation and obsolescence, if allowed, could be computed. The respondent's brief, with commendable thoroughness, has demonstrated the fallacy of the petitioner's contention, and, since the law has been fully expounded in the Board's opinion in the *Jersey Central* case, we feel more content to rest upon that opinion than to restate it here or to deal with the petitioner's attempted distinctions, none of which is substantial enough to affect the result. The petition for review of that decision was dismissed by order of the Circuit Court of Appeals of December 6, 1937, thus making the Board's decision final.

It may be accepted, as petitioner elaborately demonstrates, that the accounting regulations of the Interstate Commerce Commission are not controlling for Federal tax purposes. But the proposition is beside the point. The force here given to the petitioner's accounting system is not derived from the fact that the Interstate Commerce Com-

mission has prescribed the classification of accounts, but is derived from the fact that the petitioner, for whatever reason, has adopted and consistently adhered to the system and that the system has for long been treated by the Commissioner of Internal Revenue as clearly reflecting its income.

We hold, therefore, that as to the petitioner's elevators and docks it has no right, in view of the method of accounting which it has adopted, to any deduction for exhaustion, wear and tear, or obsolescence. This is true likewise as to its office building in Chicago, and the respondent's affirmative assignment of error in allowing such a deduction in respect of that building is sustained.

■ Of several donations made by the petitioner to different cities of lands to be used for streets, only one remains in controversy, the rest having been adjusted by stipulations of the parties. The question is whether petitioner is entitled, as it claims, to a deduction for $61,000, being the stipulated value on March 1, 1913, of the land which it conveyed to Sioux City in 1927 with the conditions and reversion as shown in the findings. There is no dispute that, if entitled to any deduction, the amount thereof is $61,000, but the question is whether the circumstances are a proper foundation for any deduction. The conveyance resulted in no expansion to the petitioner of its annual income. It was not the occasion for yielding to the petitioner new traffic. Its beneficial effect to the petitioner was analogous to that of a capital investment because, as shown by the evidence, it resulted in a permanent protection of the petitioner's nearby property against the dangers of flood, greater accessibility to city streets, and a diminution in the possible cost of crossing protection. Thus the situation is similar to that considered in *Kauai Terminal, Ltd.*, 36 B. T. A. 893, where the taxpayer conveyed a breakwater to the United States for the sake of the general benefit of a better harbor for an indefinite time. The question here does not involve any consideration of a charitable contribution, for corporations are entitled to no such deductions. By article 262 of Regulations 74 they are, however, permitted to deduct such contributions as have the characteristics of ordinary and necessary expenses of carrying on a trade or business. The regulations do not permit the deduction of what are essentially capital investments merely because in some way or another the conveying taxpayer can be said to derive a benefit from the conveyance.

The Commissioner's disallowance of the deduction is therefore sustained.

*Decision will be entered under Rule 50.*